STATE (Jewett relator) v. BARRETT AND WIFE.

A father may by deed part with his parental rights to the custody and services of his infant child, although such deed be not in the form required by the statute for indentures of apprenticeship, and the child is consequently not bound.

THIS is an application by Job M. Jewett, for a writ of *habeas corpus* directed to Isaac C. Barrett and Matilda, his wife, to bring up the body of Emma M. Jewett, the daughter of the applicant, about three years of age, and alleged to be unlawfully restrained of her liberty.

On the part of the respondent it is made to appear, that the said Emma when about two months old was placed in the care of her aunt, the said Matilda, by her mother, who was at work in the Pemberton Mills, Lawrence, and on that account found it inconvenient to keep the child; and to this the father assented; that the child remained with the respondents until the death of its mother, which was caused by the fall of the Mill, January 10th, 1860, and so continued until March 2, 1860, when the relator then residing with the respondents, made with them an agreement in writing and under seal as follows:

This may certify that I, Job M. Jewett, of Lawrence, county of Essex, and commonwealth of Massachusetts, do hereby, in consideration of the agreements hereinafter to be mentioned, relinquish and surrender up to said Isaac C. Barrett and Matilda, his wife, both of Bridgewater, in the county of Grafton, and State of New Hampshire, all control and custody which I have as a parent and father over the person and custody of my little daughter, Emma M. Jewett, ten months old, until the said Emma is of the age of eighteen years; and the said Isaac C. and Matilda Barrett are to have the custody, control, and the bringing up of said child until that age, the same as if she was their own child, without an interference on my part.

And the said Isaac C. and Matilda Barrett, on their part, agree to give said Emma a good common school education and learn her to do all kinds of work necessary for her future welfare and success in life, that is usually taught girls in New Hampshire; and bring her up in all respects in a suitable and proper manner, and be, so far as they may be able, a father and mother to her, and provide her with suitable food, drink, lodging, and all other necessaries according to their means and circumstances in life.

In witness whereof the said parties have hereunto set their hands and seals this second day of March, 1860.

J. M. Jewett,     [Seal.]
J. C. Barrett,    [Seal.]
M. Barrett,       [Seal.]

In presence of
Lewis W. Fling.

And that the said Emma has ever since remained with the respondents under said agreement.

*George, Foster & Sanborn,* for applicants.

*S. N. Bell,* for respondents.

Bellows, J. The substance of the agreement is, that, in consideration of the engagement of the respondents to maintain and educate the said Emma, the father relinquishes and surrenders to them the control and custody of the child until eighteen years of age. Under these circumstances the question is whether the relator has so parted with his parental right to the custody of the child that he is not entitled to the aid he seeks.

It is quite clear, as suggested by the plaintiffs' counsel, that this agreement is not in conformity with the requisitions of our statute in respect to the binding out of apprentices or servants; therefore, the infant itself is not bound. But we are of the opinion that the father may bind *himself* by such an agreement.

At common law the father being entitled to the services of his minor child might assign those services, so as to bind himself, to another, for any period during the minority, and for a consideration to enure to himself; and as a necessary consequence might also assign the custody of such minor child.

By the laws of this State the father cannot bind his infant child, after fourteen years of age, as an apprentice, without its consent, nor without indentures of the character prescribed by the act; and yet the infant alone can avoid such contract for not conforming to the statute requirements; and the father, as well as the master, will, notwithstanding, be bound by their covenants.

Such is the construction given to the Revised Statutes, ch. 151, (C. S. 160;) in *Page* v. *Marsh,* 36 N. H. 305, where it was distinctly held that although the contract failed to conform to the statute in not being executed in duplicate, yet, as between the father and master, it was " good and valid at common law," and the minor alone could avoid it.

The same construction was given to a similar statute in Massachusetts, in *Day* v. *Everett,* 7 Mass. 145, where it was held that although the indentures were not according to the statute provisions, yet they were good at common law as between the father and master, there being no provision in the statute rendering them void.

The same doctrine is recognized in *Butler* v. *Hibbard & al.* 5 Pick. 250.

In *State* v. *Smith,* 6 Greenl. Rep. 402, where a husband and wife

having separated pursuant to articles previously entered into, in which he had stipulated that in the event of such separation the children should remain with her, the court on *habeas corpus* awarded the custody of the the children to the wife. It is true, the court also hold that the custody of the children might be awarded to the wife upon the ground that their interest would be advanced by it; but the court say that "there can be no doubt but under our statute a father may transfer his right to the custody of his children until they arrive at the age of fourteen, without their consent."

A similar doctrine is held in New York. In the matter of *McDowle & al.*, 8 Johns. Rep. 328, where the infant had not signed the indentures as required by their statute, on *habeas corpus* at the relation of the father, it was held, that, although the infant was not bound, the father was; and the infant alone could object to the indentures; and the court refused to order the infant to be delivered to the father.

In *Fowler* v. *Hollenbeck*, 9 Barb. 310, it was held that indentures of apprenticeship not conformable to the statute, are voidable only by the apprentice, and are binding upon the father at common law; and see cases cited.

On the same general views the authority of the parent over the child may be delegated to a tutor or instructor for purposes of education, and the father may, by agreement with his minor child, emancipate him, and thus give him a right to his own earnings. 2 Kent's Com. 205, 221, and ibid 194, notes d. & 2, and cases cited; 1 Blk. Com. 453; *Jenness* v. *Emerson*, 15 N. H. 487; *Whiting* v. *Earle & Tr.* 3 Pick. 201.

Applying these principles to the case before us, we think the father has parted with his right to the services and custody of his child, and conferred it upon the respondents, by an agreement which is binding upon both parties, unless it be made to appear that the agreement is invalid by reason of fraud or incapacity.

We are aware that there are decisions in conflict with these views, but we think that there is a decided weight of authority against them. The prominent decisions are *Mayne* v. *Baldwin*, 1 Halst. Ch. Rep. 454, and *Regina* v. *Smith*, 16 Eng. Law & Eq. Rep. 221.

In the former case the child was taken by the respondent to be adopted by him, and brought up as his own child till of full age, and with the assent of its father, the relator; but no deed or writing of any kind was ever executed by either in relation to the custody or services of the child. The court hold that the guardianship and custody of minor children is a personal trust and not assignable, and that the verbal agreement was void, as a contract of apprenticeship, by the laws of New Jersey, and therefore award the custody to the father. Whether it was thus held void, because the agreement was merely verbal, or because of its failure to meet the positive requirements of their statute, does not appear. It may have been the former, inasmuch as it is very generally understood that the relation of master and apprentice cannot be created, and the corresponding rights and duties of the parent transferred to a master, except by deed. 2 Kent's Com. 264, and cases cited, note b. It is now so held in New Hampshire in *State* v. *Libbey* in Strafford County,

March 1863. If this was the ground of the decision, it is not an authority in this case, because here the contract was by deed.

The case of *Regina* v. *Smith*, 16 Law and Equity 221, was the case of a contract in writing between the father and the respondent, by which the father agreed that his infant child should be permitted to reside and remain with the respondent as his adopted child until she was able to provide for herself; and that he would not interfere with her bringing up and education, nor remove her from the respondent's care, and that for her support and education he would pay the respondent fourteen shillings per month.

Upon *habeas corpus* it was held that the arrangement in its nature was a consent that the respondent should have the custody of the child, and a contract to pay for its support, which consent might be revoked; and the custody was therefore awarded to the father.

No authorities are cited by the court for this decision, and it does not seem to be included in the regular series of reports of that period, which was January 1853; nor does the case appear to have been cited in the later and much considered case of *Queen* v. *Clark*, 7 Ellis & Blackburn, 186.

In the case of *People* v. *Mercien*, 3 Hill 408, and 8 Paige, Ch. 67, a written agreement assigning the custody of the child to its mother was held void, and put on the ground that the husband could not contract with the wife.

With these views and upon the state of facts now before us, we think the custody of the child should not be awarded to the father.

*Writ refused.*